UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINO WAYNE TAYLOR,<br><br>    Petitioner,<br><br>    v.<br><br>J. SULLIVAN,<br><br>    Respondent. | No. 2:18-cv-0637-MCE-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was convicted in the Sacramento County Superior Court of aiding and abetting first degree murder. He now raises the following claims: (1) the trial court erred and abused its discretion by admitting unauthenticated evidence, namely posts from the social networking service Instagram; and (2) the admission of those Instagram posts violated petitioner's due process rights because it constituted unreliable hearsay. Respondent filed an answer to these claims, ECF No. 23, and petitioner filed a traverse, ECF No. 26. The matter is submitted for decision.

## BACKGROUND

On January 25, 2014, Victor Aranda was socializing with several friends – Marissa Mesa (the woman Aranda was dating), Yvette Arguello, and Derrick ("D.J.") Kamekona – in the driveway of a house that belonged to an acquaintance named Sergio Cortez (who was also

present). Three men – petitioner, his nephew Victor Lopez, and his cousin Ruben Guajardo - approached Cortez's house. Petitioner and Lopez walked up the driveway toward Aranda and the others. Guajardo hung back and paced in the street in front of the house.

Conversation was initially friendly. Petitioner asked Cortez if he knew where he could get some cocaine and the latter said that he did not. Petitioner then turned his attention to Aranda and asked him if he would step away from the others to talk privately – again about the possibility of obtaining cocaine. Aranda agreed and the two men moved away from the house and toward the street. Lopez remained with the others and Guajardo remained in the street.

At some point after the separation Arguello testified that she heard running footsteps approaching and someone call out "What's up nigger?" Aranda was heard to reply, "What's up?" The questioner then said, "All right, bitch ass, nigger." Gunshots rang out – witness accounts differ as to the number of shots, ranging from five to twelve. The gathered friends scattered.

Aranda died after sustaining multiple gunshot wounds. An autopsy found eleven separate entrance and exit wounds caused by four bullets. Based on the entrance wounds on Aranda's body, investigators determined that the killer had been four or five feet away from Aranda when he opened fire.

Petitioner and Guajardo were both arrested and the homicide detectives informed the two men that they knew one of them was the shooter. Initially, Guajardo denied being present that night. Later he changed his story, acknowledging his presence but stating that three masked men were responsible for the killing. In an interview with detectives, petitioner stated that he didn't know what happened the night of Aranda's murder. He also repeatedly emphasized that he had three children and could not imagine being imprisoned and kept away from them.

Eventually, after detectives made clear that they had multiple witnesses placing him at the scene on the night of the murder, Guajardo admitted that he shot Aranda. He claimed that he had done so after Aranda looked at him with "death in his eyes" and dipped into his pocket for something – possibly a gun. Guajardo stated his belief that it was "either me or him."

After Guajardo's admission, detectives left petitioner and Guajardo alone in the interview room. Petitioner told Guajardo "You should have went with my gut when I said, 'No, nigga, let's

2

not go.'" Guajardo replied "They're not gonna find the gun. What you guys do with my clothes? You burn 'em? Are you sure?" Petitioner replied "Everything, seriously."

Petitioner was eventually charged with aiding and abetting the first-degree murder. Over his objections, law enforcement testified about recovered Instagram posts which were dated to November 24, 2013. An account with the handle "Smackcityboy" – whom the prosecution alleged was petitioner – wrote to user "Vickfukndamone" - an account identified as belonging to Aranda.

**Petitioner**: "A cuz we need to talk about some paper. That didn't get payed."

**Aranda**: "[H]it me 9178798361. And last time I checked it don't got shit to do with you so YOU have Chris call me not his wife!!!"

**Petitioner**: "I don't no why she called. But don't pay no mind to her. But on that it does have to do wit me that half my. So whatever u niggas got goin on together if he don't get payed I don't get payed. So I will hit u."

**Aranda**: "You got my number I ain't wit all this IG shit bruh hit me."

Prosecutors argued that the posts were evidence that a debt had gone bad between the two men and was the underlying motive for Aranda's murder. They argued petitioner planned the killing with Guajardo and intended to lure Aranda down the driveway to facilitate a clear shot.

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

I. Applicable Statutory Provisions

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

A. <u>"Clearly Established Federal Law"</u>

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

B. <u>"Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law</u>

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two

4

clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[1] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[2] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[3] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean,

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] *Faretta v. California*, 422 U.S. 806 (1975).

5

however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 182.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Richter*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Richter*, 562 U.S. at 101-102.

/////

/////

/////

6

### C. "Unreasonable Determination Of The Facts"

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination. Section 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it. *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004). Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). *Id.* at 1001; accord *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding. *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state

court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

II. <u>The Relationship Of § 2254(d) To Final Merits Adjudication</u>

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736 37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap. Accordingly, "[a] holding on habeas review that a state court error meets the ' 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary

/////

8

hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

## DISCUSSION

Petitioner argues that the above referenced Instagram posts should not have been admitted into evidence at trial. First, he claims that the posts were not properly authenticated. Second, he claims that the posts amount to unreliable hearsay and their admission violated his due process rights under the Fourteenth Amendment. Both claims fail for the reasons stated hereafter.

I. Last Reasoned Decision

The last reasoned decision belongs to the Court of Appeal which, on direct appeal, held that the Instagram postings were admissible. It explained its analysis as follows:

> *Admissibility of Instagram Posts*
>
> 1. Authentication
>
> Taylor argues the Instagram posts were not admissible because they had not been properly authenticated. He insists that the admissibility of social media raises troubling concerns about authenticity thereby impinging on his right to due process and a fair trial. While it may be true that in some cases social media presents new and different issues with respect to authentication, this is not one of those cases. We turn to well established rules of authentication and defer to the trial court's broad exercise of discretion. (*In re K.B.*, *supra*, 238 Cal.App.4th 989, 995.)
>
> While the scope of the trial court's discretion is exceedingly broad, the scope of the foundational question presented is quite narrow. "The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered. [Citation.] Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' [Citation.]" (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267, 172 Cal. Rptr. 3d 637, 326 P.3d 239.)
>
> "Importantly, 'the fact that the judge permits [a] writing to be admitted in evidence does not necessarily establish the authenticity of the writing; all that the judge has determined is that there has been a sufficient showing of the authenticity of the writing to permit the trier of fact to find that it is authentic.' [Citation.] Thus, while all writings must be authenticated before they are received into evidence ([Evid. Code, ]§ 1401), the proponent's burden of producing evidence to show authenticity ([Evid. Code, ]§ 1400) is met 'when sufficient evidence has been produced to sustain a finding that the

9

document is what it purports to be. [Citation.]' [Citation.] The author's testimony is not required to authenticate a document ([Evid. Code, ]§ 1411); instead, its authenticity may be established by the contents of the writing ([Evid. Code, ]§1421) or by other means ([Evid. Code, ]§ 1410 [no restriction on the 'means by which a writing may be authenticated'])." (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1434-1435, 135 Cal. Rptr. 3d 628 (*Valdez*).)

During pretrial motions in limine, Taylor sought to exclude any mention of a drug debt owed to Skific's father[4] and Instagram communications between Taylor and Aranda mentioning the debt. The prosecutor took the position that the contentious exchange on Instagram between Taylor and Aranda regarding a drug debt was relevant to show a motive for homicide. The trial court excluded evidence of rumors of a drug debt on the street based on relevancy and hearsay, but concluded the Instagram exchange was relevant to show some type of argument and relationship, and therefore possibly motive.

The issue resurfaced at trial when the prosecution decided to introduce the Instagram messages and the defense objected. The trial court overruled the defense objections explaining as follows: "I believe first of all the uploading of the Instagrams as to the victim, 'vickfukndamone' is [sic] guess is his screenshot name with pictures is relevant. Shows the name, pictures of the victim, and the picture of the victim apparently is he's also there with two kids, his kids, I don't know."

The trial court continued: "[T]he alleged victim is having a conversation with 'smackcityboy', when you download 'smackcityboy', the pictures that pop up are pictures of Mr. Taylor. So one could assume that 'smackcityboy' is Mr. Taylor.

"Could somebody else have typed that in? Certainly. There's ways to hack in, but it is circumstantial evidence that that is Mr. Taylor. So the common denominator is we have a conversation between the alleged victim and Mr. Taylor. The conversation seems to talk about money being owed to somebody. Whether or not it's owed to Mr. Taylor or not, Mr. Taylor is getting involved in that conversation and involved in retrieving that debt. So it is relevant for that as it goes to the motive. Then it shows the pictures of Mr. Taylor, which shows that that is his account.

"I find that — because of the dates, the date of the downloading of the message appears to be a month or two prior to the death of Mr. Aranda, correct?" After the prosecutor answered affirmatively the court concluded: "So I find it is within a time frame, that the names and pictures that come up with these names is relevant, and I will

---

[4] Amanda Skific was the mother of petitioner's three children. *People v. Taylor*, 2017 Cal. App. Unpub. LEXIS 3247, *1-2 (Cal.App. 3 Dist., 2017). He did not live with Skific in January 2014, but visited regularly to see his children – including the morning of January 25. *Id.* at *2. This information does not bear directly on the resolution of petitioner's federal habeas claims and is provided solely for context.

10

allow it."

A detective testified that he logged into Instagram on February 3, 2014, and pulled up the account by the user name vickfukndamone and determined from the photos on the account that it belonged to Aranda. The detective found a post from another user with the screen name smackcityboy regarding some paper that did not get paid. From photos on smackcityboy's Instagram account, the detective opined the account was Taylor's.

The detective read the exchange of posts between Aranda and Taylor to the jury.

Taylor complains that no one authenticated the Instagram posts. He did not testify that he had written the posts; nor did anyone from Instagram testify. He insists there is no evidence that the messages were sent from his computer or that he even had a computer. He contends that no one testified about the creation of the Instagram messages or accounts, the accuracy of the dates and times, the ability of third parties to access the accounts, or the certainty of determinations as to who owns a page.

A similar claim was made and rejected in *Valdez*, *supra*, 201 Cal.App.4th 1429. The court looked to indicia on the defendant's MySpace social media Internet page including photographs and personal comments and content to authenticate it. There were pictures of the defendant on the page, greetings to him from his sister, and comments that were either addressed to him by name or relation. The defendant did not dispute that he was the person depicted in the photographs, including the photograph of his face serving as the MySpace page icon identifying the owner of the page. (*Id.* at p. 1435.) The court explained: "[T]he writings on the page and the photograph corroborated each other by showing a pervading interest in gang matters, rather than an anomalous gesture. Importantly, this consistent, mutually reinforcing content of the page helped authenticate the photograph and writings, with no evidence of incongruous elements to suggest planted or false material. Other key factors include that the evidence strongly suggested the page was Valdez's personal site . . . and that the page was password protected for posting and deleting content, which tended to suggest Valdez, as the owner of the page, controlled the posted material." (*Id.* at p. 1436.)

The court concluded: "Although Valdez was free to argue otherwise to the jury, a reasonable trier of fact could conclude from the posting of personal photographs, communications, and other details that the MySpace page belonged to him. Accordingly, the trial court did not err in admitting the page for the jury to determine whether he authored it." (*Valdez*, *supra*, 201 Cal.App.4th at p. 1435.)

Similarly, in *In re K.B., supra*, 238 Cal.App.4th 989, the court found photographs from a cell phone, including website screenshots, had been sufficiently authenticated, explaining the "ultimate determination of the authenticity . . . is for the trier of fact, who must consider any rebuttal evidence and balance it against the

11

authenticating evidence in order to arrive at a final determination . . . ." (*Id.* at p. 997.)

The same is true here. The numerous photographs of Taylor, including photographs with his children, is circumstantial evidence that the smackcityboy Instagram account belonged to him. As in *Valdez*, Taylor was free to argue otherwise to the jury or to introduce evidence it was not his account or that someone had hacked his account. But the content of the Instagram account was sufficient to uphold an ultimate jury determination of authenticity and for us to conclude, as the courts did in *Valdez* and *In re K.B.*, the trial court did not abuse its discretion by admitting the evidence.

Relying on *People v. Beckley* (2010) 185 Cal.App.4th 509, 110 Cal. Rptr. 3d 362 (*Beckley*), Taylor insists that the photographs on smackcityboy's account were not legally sufficient for authentication. In *Beckley*, the court observed that digital photographs can be altered and "'[a]nyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation. Moreover, the Court holds no illusions that hackers can adulterate the content of any web-site from any location at any time.'" (*Id.* at pp. 515-516, quoting *St. Clair v. Johnny's Oyster & Shrimp, Inc.* (S.D.Tex. 1999) 76 F.Supp.2d 773, 775.) In the absence of testimony from a police officer that the photograph truly portrayed the girlfriend flashing a gang sign or from an expert that the picture was not a composite or faked, the court in Beckley concluded it was not properly authenticated, and therefore, was not admissible. (*Beckley*, at pp. 514-516.)

*Beckley* has been distinguished and its rationale rejected. The court in *Valdez* distinguished *Beckley*. "Here, in contrast, evidence of the password requirement for posting and deleting content distinguishes *Beckley*, as does the pervasive consistency of the content of the page, filled with personal photographs, communications, and other details tending together to identify and show owner-management of a page devoted to gang-related interests." (*Valdez*, *supra*, 201 Cal.App.4th at p. 1436.)

The court in *In re K.B.* was more critical. "To the extent *Beckley*'s language can be read as requiring a conventional evidentiary foundation to show the authenticity of photographic images appearing online, i.e., testimony of the person who actually created and uploaded the image, or testimony from an expert witness that the image has not been altered, we cannot endorse it. Such an analysis appears to be inconsistent with the most recent language in Goldsmith which explained that in authenticating photographic evidence, the evidentiary foundation 'may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded. [Citations.]' (*Goldsmith*, *supra*, 59 Cal.4th at p. 268.) . . . [¶] Furthermore, reading *Beckley* as equating authentication with proving genuineness would ignore a fundamental principle underlying authentication emphasized in *Goldsmith*. In making the initial authenticity determination, the court need only

12

conclude that a prima facie showing has been made that the photograph is an accurate representation of what it purports to depict. The ultimate determination of the authenticity of the evidence is for the trier of fact, who must consider any rebuttal evidence and balance it against the authenticating evidence in order to arrive at a final determination on whether the photograph, in fact is authentic." (*In re K.B.*, *supra*, 238 Cal.App.4th 989, 997.)

We agree. The content contained in smackcityboy's Instagram account was a sufficient prima facie showing to justify the trial court's admission of the evidence. While the potential weaknesses of the evidence presented perfect fodder for argument to the jury, the weaknesses go to the weight, not to the admissibility of the evidence. On this record, we can find no abuse of discretion.

2. Violations of Due Process

Both defendants challenge the admissibility of the Instagram posts on constitutional grounds much graver than the lack of authentication. Taylor argues the evidence constituted unreliable hearsay, and in the absence of particularized guarantees of trustworthiness, violated his right to due process under the Fourteenth Amendment. Both defendants contend the admission of speculative and untenable motive evidence also violated their Fourteenth Amendment right to due process. We will not nullify the jury's verdict based on supposed constitutional challenges that are nothing more than a challenge to the weight of the evidence.

We begin with the hearsay objection. Defendants insist the Instagram posts were inherently unreliable, and therefore, in the absence of special indicia of reliability, the admission of the evidence violated their right to due process. We have already rejected defendants' notion that the Instagram evidence is unreliable and lacks trustworthiness. The content of the smackcityboy's Instagram account was sufficient evidence of trustworthiness.

The jurors were instructed that the Instagram posts was evidence they could consider only against Taylor, not Guajardo. Nevertheless, Guajardo maintains the limiting instruction could not ameliorate the prejudice he suffered as a result of the admission of the speculative and untenable evidence of motive purportedly contained in Taylor's Instagram posts. Again both defendants' premise is that the evidence was speculative and untenable.

This argument has little to do the admissibility of social media evidence as a matter of constitutional law. Rather, it speaks to the appropriate weight to be assigned the evidence as proof of motive. We agree with defendants that the evidence of motive was weak. The only evidence of motive was one brief exchange between Taylor and Aranda two months before the shooting in which Taylor said nothing contentious or threatening. Moreover, the drug debt apparently was owed to Skific's father, not directly to Taylor. But to agree the evidence is weak is not to agree that it is speculative or untenable. In other words, the argument suffers from the same flaw—it attempts to magnify weak evidence into a constitutional transgression.

13

> There is no dispute that the prosecution did not have the burden to prove motive, but evidence of motive is relevant and admissible. The prosecution's theory in this case was that Taylor and Guajardo had preplanned the shooting because of the outstanding debt, a part of which Taylor claimed would be paid to him. As part of that theory, the prosecutor argued that Taylor lured Aranda down the driveway to give Guajardo a clear shot. There were, of course, many other theories as to how and why defendants both ended up at the Cortez house that evening and their lawyers clearly made the case to the jury that their meeting was fortuitous and unplanned. It was the jury's prerogative, not ours, however, to reject the notion that Taylor would plan a shooting to collect on a debt to his girlfriend's father and any weakness in the evidence of motive does not impinge on the defendants' right to due process.

*People v. Taylor*, 2017 Cal. App. Unpub. LEXIS 3247, at *7–19 (Cal.App. 3 Dist., 2017).

## II. Clearly Established Federal Law

The Supreme Court has held that a state evidentiary ruling does not give rise to a cognizable federal habeas claim unless the ruling violated a petitioner's due process right to a fair trial. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). In other words, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Additionally, a federal habeas court is bound by a state court's interpretation of state law. *See Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("we have repeatedly held that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (citation and internal quotations omitted); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus") (citations omitted); *Hicks v. Feiock*, 485 U.S. 624, 629-30 (1988) ("We are not at liberty to depart from the state appellate court's resolution of these issues of state law. Although petitioner marshals a number of sources in support of the contention that the state appellate court misapplied state law on these two points, the California Supreme Court denied review of this case, and we are not free in this situation to overturn the state court's conclusions of state law.") (footnote omitted).

## III. Analysis

First, petitioner's claim that the trial court erred by admitting the Instagram without proper authentication sounds in state law and, consequently, does not afford a basis for federal habeas

14

relief. *See Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995) (concluding that argument that admission of wooden clubs found at defendant's house was constitutional error due to lack of evidence linking clubs to crimes "presents state-law foundation and admissibility questions that raise no federal habeas issues"). And the state court which issued the last reasoned decision – the court of appeal – determined that "[t]he content contained in smackcityboy's Instagram account was a sufficient prima facie showing to justify the trial court's admission of the evidence." *Taylor*, 2017 Cal. App. Unpub. LEXIS 3247 at *16. As noted by the case law in the foregoing section, this court must defer to this determination of state law. *See*, *e.g.*, *Wainwright*, 464 U.S. at 84.

Second, with regard to petitioner's unreliable hearsay due process claim, the Supreme Court has never held that the admission[5] of non-testimonial, unreliable hearsay in a prosecution violates a defendant's due process rights. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause barred admission of out-of-court "testimonial" statements, except where the witness was unavailable and the defendant had prior opportunity to cross-examine the witness. 541 U.S. 36, 68 (2004). By contrast, the Supreme Court has held that *Crawford* does not speak to non-testimonial hearsay statements. *See Giles v. California*, 554 U.S. 353, 376 (2008) ("only testimonial statements are excluded by the Confrontation Clause"). *Crawford* declined to define "testimonial," however. *Crawford*, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of 'testimonial.'"); *Flournoy v. Small*, 681 F.3d 1000, 1004-1005 (9th Cir. 2012) (noting that *Crawford* failed to "delineate precisely what statements qualify as 'testimonial.'"). In *Davis v. Washington*, the Supreme Court held, by way of a non-exhaustive definition, that statements are testimonial when their primary purpose is to "establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. 813, 822 (2006). In *Williams v. Illinois*, the Supreme Court suggested that a statement is "testimonial" if its declarant knew, or should have known, that its primary purpose was "accusing a targeted

---

[5] The Supreme Court has held that the *exclusion* of a hearsay statement which bears persuasive assurances and is critical to the defense may violate a defendant's due process rights. *See Su Chia v. Cambra*, 360 F.3d 997, 1003 (9th Cir. 2004) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

15

individual of engaging in criminal conduct" and the statement was formal in quality – such as an affidavit, deposition, prior testimony, or confession. 567 U.S. 50, 58 (2012).

The Instagram posts at issue here do not fall into any reasonable definition of "testimonial." They were posted well before the murder and obviously bore no formal qualities. There could be no reasonable expectation, at the time the posts were made, that the posts would be used in future judicial proceedings. *See United States v. Saget*, 377 F.3d 223, 228 (2d. Cir. 2004) ("[T]he types of statements cited by the Court as testimonial share certain characteristics; all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings."). Thus, the court concludes that, even if the Instagram posts were unreliable hearsay, no clearly established federal law barred their admission.

And, to the extent that petitioner argues that the admission of this evidence violated his due process rights in some other way, the court is not persuaded. The erroneous admission of evidence in a state criminal trial gives rise to federal habeas relief only where the admission deprived the petitioner of his right to a fair trial. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999). Plaintiff appears to argue that the evidence of aiding and abetting against him was weak. ECF No. 1 at 10 ("the only evidence that connected Petitioner to this crime was the unauthenticated Instagram post from a social media account with the name of smackcityboy attached to it."). But, as the state court of appeal noted, that is a separate argument from whether the evidence was properly admitted. *Taylor*, 2017 Cal. App. Unpub. LEXIS 3247 at *17-18. What weight to assign the evidence was up to the jury. "Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir.1991). In such cases, "we must rely on the jury to sort [the inferences] out in light of the court's instructions." *Id.* Admission of evidence violates due process "[o]nly if there are no permissible inferences the jury may draw" from it. *Id.* There were clearly permissible inferences the jury could draw from the Instagram posts – specifically a potential motive for petitioner's participation in Aranda's murder.

CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: April 29, 2019.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE